THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:  July 31, 2007
PTH

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

In re Valenite Inc.

_____

Serial No. 76482852

_____

Adrienne L. White, Esquire of White, Redway & Brown LLP for Valenite Inc.

Christopher L. Buongiorno, Trademark Examining Attorney, Law Office 102 (Thomas V. Shaw, Managing Attorney).

_____

Before Hairston, Walters and Rogers, Administrative Trademark Judges.

Opinion by Hairston, Administrative Trademark Judge:

Valenite Inc. has applied to register the mark VALPRO for goods identified, as amended, as "tools for power operated metal cutting machines, namely, turning, milling, grooving, drilling, boring and threading tools; and cutting inserts and tool holders for power operated metal cutting machines and tools; and component parts therefor." Application Serial No. 76482852 was filed on January 16, 2003 based upon applicant's allegation of a *bona fide*

intention to use the mark in commerce. The application was published for opposition on July 27, 2004 and a notice of allowance subsequently issued on October 19, 2004.

Applicant filed its statement of use and specimens consisting of two webpage printouts on April 19, 2005, alleging first use anywhere and first use in commerce on December 31, 2003. On May 13, 2005 the trademark examining attorney issued a refusal to register on the ground that applicant's specimens were not acceptable to show use of the mark in connection with the identified goods. On July 21, 2005 applicant filed a response wherein it argued against the refusal. The examining attorney, however, was not persuaded by applicant's arguments and on August 2, 2005, issued a final refusal to register.

On February 1, 2006 applicant filed a notice of appeal and a request for reconsideration. With the request for reconsideration, applicant submitted another webpage printout. On February 8, 2006 the examining attorney denied the request for reconsideration. On July 6, 2006 applicant filed a further request for reconsideration of the final refusal along with the declaration of its Director of Marketing, Thomas Benjamin. The Board, in an order issued July 24, 2006, construed the further request for reconsideration as a request for remand, found that

2

applicant had shown good cause therefor, and granted the request.  The Board suspended proceedings in the appeal, remanded the application to the examining attorney and directed him to "consider the request."  (Order at p. 2) In an action issued July 31, 2006, the examining attorney requested that the Board "disregard the declaration as untimely" and "find that applicant failed to show good cause to support its submission."  (Action at p. 2)  The examining attorney did not consider the declaration and continued to maintain that the specimens were not acceptable.  Applicant and the examining attorney thereafter filed briefs.

Before turning to the merits of the appeal, we will address the examining attorney's July 31, 2006 action.  It appears that the examining attorney is requesting reconsideration of the Board's decision granting the remand request.  We see no error in the Board's decision and accordingly deny the examining attorney's request. Moreover, in this situation, it would have been the better practice for the examining attorney to consider the declaration in the alternative, in the event his request for reconsideration was denied.  In any event, we note that the examining attorney stated in his brief that he was not persuaded by the declaration.

3

We turn then to the merits of the appeal.  The sole issue for consideration is whether the specimens submitted by applicant with its statement of use are acceptable to show use of the mark in connection with the identified goods.[1]  In this regard, we note that Trademark Rule 2.56(b)(1) provides:

> A trademark specimen is a label, tag, or container for the goods, or a display associated with the goods.  The Office may accept another document related to the goods or the sale of the goods when it is not possible to place the mark on the goods or packaging for the goods.

Trademark Rule 2.88(b)(2), applicable to this application because applicant filed its specimen with its Statement of Use, requires a specimen of the mark as actually used in commerce, and specifically refers to Rule 2.56 for the requirements for specimens.

Further, Section 45 of the Trademark Act states, in pertinent part, that a mark is deemed to be in use in commerce

> (1) on goods when –
>
> > (A)  it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes

---

[1] Insofar as the webpage printout submitted by applicant with its request for reconsideration is concerned, applicant did not request that this webpage printout be considered a substitute specimen.  Moreover, we agree with the examining attorney that it may not be considered a substitute specimen because it was not accompanied by an affidavit or declaration of use.

such placement impracticable, then on documents associated with goods or their sale, …

As indicated, applicant's specimens are two webpage printouts from the website http://www.valenite.com. Relying on Lands' End Inc. v. Manbeck, 797 F.Supp. 511, 24 USPQ2d 1314 (E.D. Va. 1992), and In re Dell, Inc., 71 USPQ2d 1725 (TTAB 2004), applicant argues that the webpages are displays associated with the goods. The examining attorney, on the other hand, contends that the webpages do not meet the criteria set forth in *Lands' End* and *Dell* with respect to displays associated with the goods, because "the mark is not associated with the goods," and there is not "sufficient ordering information." (Brief p. 2).

In the *Lands' End* case, the court held that a catalog page containing a picture of a purse in association with the mark KETCH and ordering information constituted a display associated with the goods. Specifically, the court stated:

> …use of the term KETCH with the picture of the purse and corresponding description constitutes a display associated with the goods. The catalogue is by no means "mere advertising." A customer can identify a listing and make a decision to purchase by filling out the sales form and sending it in or by a calling in a purchase by phone.

24 USPQ2d at 1316.

In the *Dell* case, the Board held that "a website page which displays a product, and provides a means of ordering the product, can constitute a 'display associated with the goods,' as long as the mark appears on the webpage in a manner in which the mark is associated with the goods." Further, the Board pointed out that "[i]t is a well-recognized fact of current commercial life that many goods and services are offered for sale on-line and that on-line sales make up a significant portion of trade."  71 USPQ2d at 1727.

As previously indicated, applicant submitted two webpage printouts, one of which is applicant's "home" webpage and is reproduced below:



As can be seen, VALPRO appears at the top middle of the webpage. To the left of VALPRO is a picture of some of applicant's cutting inserts. Further down the webpage is the wording "Featured Products/Events" with a picture of a particular product which is described as "5 cutting edges competitively priced with 4 square inserts of equivalent size, with minimal change in DOC capability." In addition, the webpage contains a link to an online catalog, and, under the heading "Service and Support," toll free phone numbers and web links to customer service, technical support and "an instant link [via the "Go ValPro" button] to our Technical Resource Center." Applicant's director of marketing, Thomas Benjamin, states in his declaration that "these [toll-free] numbers are now, and . . . have been, used to place orders for the goods." (Declaration at p. 2). Further, according to applicant, "[s]election and ordering of VALPRO systems and components requires careful calculation and technical knowledge, so customers expect to purchase the goods by contacting Appellant's Customer Service group. The Customer Service group takes orders by telephone and online, provides pricing information and handles delivery scheduling." (Brief at p. 14).

We find that the webpage satisfies the criteria set forth in *Lands' End* and *Dell* that the specimen (1) include

7

a picture of the relevant goods; (2) show the mark sufficiently near the picture of the goods to associate the mark with the goods; and (3) contain the information necessary to order the goods. In reaching this finding, we are mindful of the observation in *Dell* that "a well-recognized fact of current commercial life [is] that many goods and services are offered for sale on-line, and that on-line sales make up a significant portion of trade." 71 USPQ2d at 1727. There is nothing in the record to suggest that this observation is any less apt three years after it was made. Also important is the specialized industrial nature of applicant's goods, which is apparent from review of the identification of goods and applicant's specimen. Applicant states on its webpage that it offers "technical training courses, including Machining Principles and Basics of Cutting Tool Materials," and, as already noted, there is a link to applicant's "Technical Resource Center, including MSDS Sheets, online calculators, reference tables and more." (emphasis added). Thus, we have no reason to doubt the accuracy of applicant's argument in its brief that "[s]election and ordering of VALPRO systems and components requires careful calculation and technical knowledge." We also note that the examining attorney has not disputed applicant's contention on this point, which we would have

8

expected if the examining attorney disagreed with the argument.

The examining attorney argues that "the wording 'VALPRO products' is not located anywhere" on the webpage; and "there is not one instance where the term 'products' and the proposed mark are used together." (Brief p. 4). However, neither *Lands' End* nor *Dell* requires that the mark and the term 'products' (or the name of the product, for that matter) appear adjacent to each other. In the context of this webpage, VALPRO is prominently displayed and used in a manner that purchasers will recognize it as a trademark for applicant's goods.

Further, we are not persuaded by the examining attorney's argument that customers would view applicant's VALPRO mark as identifying applicant's customer support activities rather than applicant's goods because of the presence of the "Go ValPro" icon near the bottom of the webpage. This icon provides a link to applicant's Technical Resource Center and the use of "ValPro" on this button is as a link to technical information about applicant's VALPRO products. In other words, applicant's use of VALPRO in this manner is not inconsistent with trademark use of VALPRO.

9

Contrary to the examining attorney, we are convinced that the information necessary to order applicant's goods is present in this case. Applicant has stated, and it is readily apparent from the record, that applicant's tools, cutting inserts and component parts are specialized industrial products. Thus, it follows that customers would need to consider technical information about the products prior to placing an order, and may very well need technical assistance when purchasing these products. These are not products that can be ordered from a web page by clicking on an image of the product to add it to a shopping cart for checkout. Equally important, applicant's director of marketing, Mr. Benjamin, has stated that customers do in fact order applicant's products by way of the "Customer Service" toll-free telephone numbers. Further, the term "customer service" itself is broad enough to encompass the service of allowing customers to order applicant's products by using the toll-free telephone numbers. In other words, there is nothing inherent in the term "customer service" that limits its meaning to solely providing information. Thus, the fact that the webpage does not allow a customer to click on a product to add it to a shopping cart or make specific mention under the customer service link or phone number that the customer should "click here" or "call now"

10

to place an order does not compel a different result in this case.

We find that the present situation differs from In re MediaShare Corp., 43 USPQ2d 1304 (TTAB 1997), where the Board held that the applicant's fact sheet brochure specimens did not constitute a display associated with the goods, but rather were merely advertising material.  In *MediaShare*, the fact sheet did not qualify as a display associated with goods because, among other things, "none of the computer monitor display screens reproduced in applicant's 'fact sheet' brochure … clearly appears to constitute or include a picture of applicant's 'PB.WEB' computer software, whether in use or otherwise."  Id. at 1306.  In contrast, in the instant case there are multiple pictures of VALPRO goods.

In addition, the PB.WEB product was clearly identified in the fact sheet as "an add-on module to the [applicant's] ProductBase system" and the fact sheet therefore touts the benefits of the PB.WEB product for users of the ProductBase system.  While the fact sheet includes a list of "system requirements," there is nothing in the fact sheet that indicates the software product requires any customization or technical consultation before an existing customer of the applicant could purchase the add-on module for the

product it already had.  Nonetheless, as the Board noted, the fact sheet did not include pricing information.  Id. Thus, even existing customers of the applicant would have viewed the fact sheet as advertising for an add-on product they might wish to consider and not as a means for placing an order.  In the instant case, however, applicant's website, in addition to showing pictures of the goods, provides an on-line catalog, technical information apparently intended to further the prospective purchaser's determination of which particular product to consider, an online calculator and both a link to, and phone number for, customer service representatives.  Therefore, applicant's website provides the prospective purchaser with sufficient information that the customer can select a product and call customer service to confirm the correctness of the selection and place an order.  In short, we view the applicant's website as much more like the website in the *Dell* case than the fact sheet in *MediaShare*.[2]

Moreover, it must be remembered that whether a specimen is mere advertising or whether it is a display

---

[2] We note, too, that the prospective purchaser's final cost for purchasing a product would, in *Dell*, be dependent on the customization choices of the computer purchaser and, in the instant case, the final technical consultations with applicant's customer service agents.  This similar step also makes the instant case more akin to *Dell* than to *MediaShare*.

associated with the goods is a question of fact which must be determined in each case based on the evidence in that particular case.  In re Shipley Co., 230 USPQ 691 (TTAB 1986).  Based on the evidence in this case, and in view of the prevalence of online retailing, and the fact applicant's goods are specialized industrial products, we conclude that applicant's "home" webpage constitutes a display associated with the goods.  In view of our finding, we need not consider applicant's "customer service" webpage.

**Decision**:  The refusal to register is reversed.